13529

COLUMBIA THEOLOGICAL SEMINARY v. ARNETTE *ET AL.*

(167 S. E., 465)

*Messrs. Sloan & Sloan,* for appellants,

*Mr. James S. Verner,* for respondents,

December 1, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appeal here is from an order of his Honor, Circuit Judge Townsend, sustaining a demurrer and granting a motion of the plaintiff to strike out certain special defenses set up in the answer of the defendants, and also from an order of reference made in the cause.

The action is one for foreclosure of a mortgage of real estate, executed by J. C. Arnette, now deceased, to the plaintiff, on certain real estate in Richland County; and, in addition, the plaintiff seeks a judgment against the infant defendants, John Coleman Arnette and Sarah Elizabeth Arnette, as heirs at law of their father, J. C. Arnette, and against R. Beverley Sloan, as guardian of the two infants and as administrator of the estate of Marie Simonton Arnette, the widow of the mortgagor, now deceased, all of whom, it is alleged in the complaint, came into possession of various sums of money from the personal estate of the mortgagor.

The complaint alleged the execution and deliverey of the bond and mortgage sued on to the plaintiff on June 17, 1920, the maturity of the papers three years from their date, and the amount due thereon; the death of the mortgagor, intestate, on May 9, 1922, leaving as his sole heirs at law his widow, Marie Simonton Arnette, and the two infant defendants; the appointment of J. Evans Elliott as administrator of the estate of the mortgagor; the payment of all the debts of the deceased mortgagor, except the claim of the plaintiff, and the payment by the administrator to the three heirs at law of the deceased in equal shares, the sum of $3,750; the discharge of the administrator on April 12, 1924; the death intestate thereafter of the widow of Arnette, and that her sole heirs at law were the two infant defendants; and the appointment of R. Beverley Sloan as

the administrator of her estate, which estate is in the course of administration.

In addition to a demand for judgment for foreclosure and sale, the plaintiff also claimed and prayed for judgment against the defendants for the amount due on its bonds and mortgage to the extent of the assets received by them from the estate of the deceased mortgagor.

By their joint answer, through their guardian *ad litem,* the infant defendants, after pleading lack of information as to certain allegations of the complaint, and after admitting other allegations with reservations, set up as special defenses: (1) The Plaintiff mortgagee's neglect to file with the administrator of the estate of their father, the mortgagor, any claim for the amount sued for in this action, and the failure of the mortgagee to oppose the discharge of the administrator when he advertised for creditors to file claims with him, and published a notice of his intent to apply for a discharge: (2) the plaintiff's failure to file with the administrator of Mrs. Arnette any claim for any part of the amount sued for in this action, pursuant to notice to creditors given by the administrator; and (3) the plaintiff's failure to file with the guardian of the two infant defendants any claim for the amount sued for in this action.

By his separate answer, the defendant R. Beverley Sloan, as administrator of the estate of Mrs. Arnette, pleaded as a special defense the failure of the plaintiff to file and prove any claim for the amount sued for with the several administrators and guardians, and that such failure barred the plaintiff's right to recover anything from the estate of his intestate.

The plaintiff demurred to the special defenses, mentioned above, and moved to strike from the answers all references to the failure of the plaintiff to file claims as set forth therein.

When the demurrer and motion of the plaintiff first came on for hearing before Judge Townsend, he passed an order

allowing the defendants to file a bill of particulars to their answers, alleging therein the facts as to how their rights were injuriously affected or prejudiced, and to show why it would be unjust and inequitable to allow the plaintiff the relief it prayed for.

In response to the first order of Judge Townsend, the defendants filed their bill of particulars, alleging that they were misled to the conclusion that the plaintiff was relying on the value of the mortgaged property for the payment of its debt, without recourse on any of the funds received from the estate of the mortgagor by the defendants, and that at the maturity of the mortgage debt the mortgaged premises were well worth the amount of the debt, and at the time of the foreclosure proceedings, on account of the general economic conditions, the value of the premises had been materially decreased, and, had the plaintiff filed its claim with the respective estates, or objected to the discharge of the administrator, or endeavored to collect and enforce the mortgage debt at its maturity, that the respective estates of the deceased persons and the infants would have had an opportunity to protect their interest from loss, and that they would have protected the same.

Within ten days after issue joined, the defendants, under the provisions of Rule 28 of the Circuit Court, gave notice that they would move for an order requiring that the issues of fact arising under their answers be framed for and tried before a jury. This motion was returnable before his Honor, Judge Sease, then presiding in the Court of Common Pleas of Richland County. At the time of the calling of this motion, the time for the plaintiff to demur and strike out the special defenses, as amended by the bill of particulars, had not expired, and the plaintiff's counsel reserved all rights in that respect. The case was marked "heard," pending a determination of the demurrer and motion, which plaintiff's counsel gave notice that he would enter.

Later Judge Townsend heard the demurrer and motion of the plaintiff to strike out the special defenses of the de-

fendants, to which attention has been called, as they were amended by the bill of particulars, on the ground that they did not allege any facts sufficient to constitute a defense to the action. The demurrer was sustained, and the motion to strike granted. The Circuit Judge also ordered that the cause be referred to the master to take the evidence and compute, ascertain, and report the amount due on the bond and mortgage, and further to take evidence and report what amounts each of the defendants, heirs at law of the deceased mortgagor, received from his estate. From that order, the defendants have appealed.

The important exception is based upon the contention that the facts set forth in the special defenses, if sustained, showed such laches on the part of the plaintiff as to bar it from tracing the funds in the hands of the defendants, received from the estate of the mortgagor, and securing judgment against such defendants.

Under well-recognized legal principles and statutory provisions, some things in the cause are very clear.

First, it is plain that, upon the death of the mortgagor, Mr. Arnette, intestate, his title to the mortgaged premises descended to, and vested in, his widow and two children, as his only heirs at law, each taking an undivided one-third interest. Upon the death of Mrs. Arnette, her one-third undivided interest descended to, and vested in, the two children, as her only heirs at law, and this resulted in giving to each of the two children an undivided one-half interest in the mortgaged premises. The two children therefore are proper and necessary parties to the foreclosure suit.

Likewise, it is entirely clear that the sum of $3,750-.00, in the hands of the administrator, under the provisions of Section 8995 of the 1932 Code, was applicable to the payment of the debts of the intestate, Mr. Arnette. The bond and mortgage now in suit constituted a debt due by the intestate, and should have been paid out of the assets in the hands of the administrator in the order pre-

scribed in that section. The failure of the mortgagee to file a claim for the debt did not free these personal assets from their applicability to its payment.

Section 8993 of the Code requires an administrator to give three weeks' notice by advertisement for the creditors of an estate in his charge to render an account of their demands, duly attested, and allows an administrator twelve months, reckoning from the grant of administration, to ascertain the debts due from the decreased, and Section 418 of the Code provides that no action shall be commenced against the administrator for the recovery of any debt of the intestate until twelve months after the intestate's death.

Section 8994 provides that, if a creditor shall neglect to file his claim within the twelve months' period, the administrator "shall not be liable to make good the same." But this is not a nonclaim statute. Its primary object "is to exempt executors and administrators from liability for a devastavit where they have administered and distributed the estate in their charge without reserving assets which would otherwise have been applicable to the delinquent creditor's claim." *McNair v. Howle,* 123 S. C., 252, 116 S. E., 279, 286. A claim not filed within the twelve months is not barred by this section, and the claimant may reach available assets for the satisfaction of his demands, unless such claim be otherwise barred. *Id.* But this section does not preclude a mortgagee from foreclosing his mortgage within the twelve months' period, if no judgment is sought against the administrator or executor for deficiency. *Green v. McCarter,* 64 S. C., 290, 42 S. E., 157. After the death of the mortgagor, the mortgagee had the option to file his claim for the full amount of the mortgage debt and have the same paid out of the personal assets in the hands of the administrator, or he may have foreclosed his mortgage and applied the proceeds arising from the sale of the mortgaged premises to the payment of the mortgage debt, and then filed his claim for the deficiency, if any, against the

estate of the mortgagor as an unsecured claim. *Weatherly v. Medlin,* 141 S. C., 290, 139 S. E., 633.

Accordingly, it was the duty of the administrator of the mortgagor's estate to ascertain the debts due by his intestate, and to pay them in the order prescribed by the statute out of the personal assets in his hands. Had he done so, the funds now in the hands of the guardian of the children and the administrator of the widow of the mortgagor would not have been distributed to those heirs at law, and the mortgage debt to that amount would have been discharged. Instead of following strictly the legal requirements, the administrator distributed the sum of $3,750.00 to the heirs at law, leaving the mortgage debt unpaid and still a claim against the mortgagor's estate.

The funds having been distributed and placed in the possession of the distributees, are they now applicable to the payment of the bond and mortgage? Unquestionably, under the cited statutes and decisions, they would be applicable had the distribution not been made, as the bond evidencing the debt is not barred by the Statute of Limitations.

The main question is this: Under the facts alleged in the answers, is the mortgage debt barred by the laches claimed by the defendants?

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a Court of equity; such delay in enforcing one's rights as works disadvantage to another." 21 C. J., 210.

" 'Laches' connotes undue lapse of time, negligence, and opportunity to have acted sooner; all three factors being

necessary before bar in equity is complete." Syllabus, *Stribling v. Fretwell,* 157 S. C., 297, 154 S. E., 415, 416.

"In order to constitute laches, there must be shown, not merely neglect for a time to enforce a legal or equitable right, where such neglect is for a period short of that which is a bar under the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty, whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right." *Edwards v. Johnson,* 90 S. C., 90, 72 S. E., 638, 644.

Applying the principles declared in the foregoing authorities to the facts of the case at bar, it seems manifest to us that the defense of laches, as set up by the defendants, cannot avail them. It does not appear that their rights have been prejudiced, or that they have sustained any disadvantage by reason of the mortgagee's failure to file the claim with the administrator. There lacks altogether any evidence, or even claim, that any other creditor has been injured by reason of failure to file the claim. Nor is there any evidence of an agreement or understanding that the mortgagee would look alone to the mortgaged premises for the satisfaction of the mortgage debt. On the contrary, the delay to file the claim was most likely to the disadvantage of the mortgagee, rather than to the disadvantage of the defendants. Had the funds now in the hands of the administrator of Mrs. Arnette's estate and the guardians of the infants been dissipated; or had passed into the hands of innocent third parties, the right to resort to those funds for payment of the mortgage debt might have been wholly lost. By not filing its claim, and by delaying the institution of the foreclosure proceedings, the mortgagee was clearly acting to its own prejudice, rather

than to the prejudice of the other parties. The fact that real estate has depreciated in value is no legal evidence of prejudice to the defendants. Had the foreclosure proceedings been delayed, say for twenty years from the maturity of the bond, and the premises then sold for more than sufficient to liquidate the mortgage debt, the surplus, much or little, would have belonged to the defendants and not to the plaintiff. Now, if the mortgaged premises sell for less than a sufficient amount to liquidate the mortgage debt, the plaintiff is entitled to resort to the estate of the mortgagor for the deficiency, unless barred for some legal reason from so doing. The defendants at any time since the settlement of the mortgagor's estate in 1924 could have paid the mortgage debt, in whole or in part, from the proceeds received by them from the mortgagor's estate. They may do so even now under proper order of the Court and prevent a sale of the mortgaged premises, if a sale under present conditions will not be advantageous. The legal title to the mortgaged premises has been in the defendants since the death of the mortgagor, and the defendants have had the legal right at any time, under proper order of the Court, to sell the premises and discharge the mortgage debt.

As to a sale of the mortgaged premises during the present great financial depression existing throughout the whole country, we deem it not out of place for this Court to say that we think it is not only within the power of the Circuit Judge, sitting as a chancellor in equity, to take present conditions into consideration, but that it is right for him so to do in fixing the time for the sale. The Court of equity was established for the purpose of giving relief that is equitable, not only to plaintiffs, but to defendants in that Court. The defendants in mortgage foreclosure cases, especially those whose homes are involved, who are without fault of their own, but on account of the country's condition are unable to meet their obligations, and the infant defendants in this cause certainly come within that

class, are entitled to much consideration and such relief as it is proper for equity to give them, just as the plaintiff is entitled to consideration and relief. See *Southern Trust Co. v. Cudd,* 166 S. C., 108, 164 S. E., 428, as to similar expressions of this Court. The fixing of the time of sale of mortgaged premises is almost entirely within the discretion of the Circuit Judge, and he may, in his decree, fix reasonable conditions. We are confident that the Judge who finally fixes the time of sale in this case will take into proper consideration the rights and circumstances of the defendants, and that his decree, with proper conditions stated therein, will protect those rights.

It is not within the province of this Court to legislate, but we cannot refrain at this time from saying that we think there is much force in the intimation of Mr. Justice Marion, who wrote the very interesting and enlightening opinion in *McNair v. Howle, supra,* that it might be well for the General Assembly of this State to enact a fair and reasonable nonclaim statute.

As to the order of reference: Since the special defenses made by the answers of the defendants were properly stricken out, it necessarily follows that the circuit Judge committed no error when he refused to direct in the order of reference the taking of evidence as to such issues. We think, too, that it is entirely clear that no error was committed when the master was directed to compute, ascertain, and report the amount due on the mortgage debt.

There was error, however, in our opinion, in directing the taking of evidence and reporting the amount received by the defendants, as distributees, from the estate of the mortgagor. The plaintiff, in effect, is seeking a judgment against the estate of the mortgagor, and this cannot be done without the personal representative of the estate being a party to the action. *McNair v. Howle, supra.* Where an action is to subject descended lands to the payment of debts, both the personal representative and the heirs

at law are necessary parties. Where the personal property has passed into the possession of the distributees, as in the instant case, we see no reason why a different rule should obtain.

Since the personal property of the deceased mortgagor has passed into the possession of his distributees, we think, in any event, the mortgagee should first exhaust his security before calling upon such distributees for any contribution from such personal property so received by them from the decedent's estate, in payment, in whole or in part, of any judgment obtained by the mortgagee against the personal representative of the mortgagor.

The judgment of this Court is that the order of the Circuit Judge appealed from be, and the same is hereby, affirmed in all respects, except as herein modified.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.